**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Anne Champion
Direct: +1 212.351.5361
Fax: +1 212.351.5281
AChampion@gibsondunn.com

November 8, 2021

VIA ECF

The Honorable Gregory H. Woods
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *DoorDash, Inc. et al. v. City of New York*, No. 1:21-cv-07564 (GHW)

Dear Judge Woods:

Pursuant to Individual Rule 2(C), Plaintiffs DoorDash, Inc., Grubhub Inc., and Portier LLC respectfully submit this opposition to Defendant City of New York's (the "City") anticipated motion to dismiss Plaintiffs' Complaint. *See* Dkt. 19. Plaintiffs state a claim for each cause of action in their Complaint, and the City's anticipated motion cannot succeed.

This case challenges the City's cap on the commissions that third-party platforms ("TPPs") like Plaintiffs can charge restaurants. TPPs' commission rates (like the prices charged by nearly every other private business) have historically been unregulated. But, purportedly in response to the COVID-19 pandemic and resulting restrictions on indoor dining, the City imposed ostensibly temporary caps on TPPs' commissions at 15% for delivery services and 5% for all other services (the "Ordinance"). Dkt. 1 ¶ 2. The Ordinance originally was scheduled to expire 90 days after the end of a declared public-health emergency that prohibited *any* on-premises dining, but the City moved the goalposts three times: first, it extended the caps until 90 days after restaurants were permitted to operate at *maximum* indoor occupancy; then it extended the price controls until the arbitrary date of February 17, 2022; and most recently, it removed the law's sunset date altogether, making it permanent. *Id.*

Courts have long held that local governments may not fix prices to benefit or protect only favored businesses, especially permanently. *See People v. Cohen*, 272 N.Y. 319, 322 (1936). The City's unprecedented price-fixing law is unconstitutional and violates its police powers.

**Plaintiffs State a Contract Clause Claim**. In determining whether a law substantially impairs a contract, courts first consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding . . . his rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018). Laws substantially impair contracts when they "invade[] an area never before subject to regulation by the State," do not allow "gradual applicability," and "work[] a severe, permanent, and immediate change." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 247, 250 (1978). If substantial impairment exists, courts then ask whether a law operates in an "appropriate" and "reasonable" way to advance "a significant and legitimate public purpose," to "guarantee[] that the State is

**GIBSON DUNN**

exercising its police power" rather than benefiting "special interests." *Energy Rsrvs. Grp. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–12 (1983).

The Ordinance fails both steps. It substantially impairs Plaintiffs' contracts by rewriting the central term: the commission rate. Dkt. 1 ¶ 103. And despite the City's contention, nothing about the Ordinance was foreseeable at the time the contracts were executed; indeed, there is no precedent for permanently fixing prices between private businesses, let alone in this historically unregulated industry. *Id.* ¶ 13. Moreover, the City cannot justify its permanent caps by pointing to its recent unconstitutional temporary caps—otherwise a city could always circumvent the Contract Clause by initially impairing contacts on a temporary basis before making that impairment permanent. The Ordinance also does not advance a significant, legitimate public purpose like health or safety, but instead transparently compels TPPs to subsidize restaurants. The Ordinance is also not "appropriately drawn" to achieve any legitimate ends, as the Second Circuit's recent decision in *Melendez v. City of New York*, 2021 WL 4997666, at *30–42 (2d Cir. Oct. 28, 2021), demonstrates. In *Melendez*, the Second Circuit reversed dismissal of a Contract Clause claim against a City law that impaired landlords' ability to recover personal guaranties. The court held that the landlords stated a valid claim because they alleged that the law favored a special interest "not at City expense . . . but, rather, at the expense of a discrete group of private persons," and without providing the plaintiffs with any compensation—just like TPPs allege here. *Id.* at *38; *see also Ass'n of Equip. Mfrs. v. Burgum*, 932 F.3d 727, 733 (8th Cir. 2019) (enjoining law that restricted manufacturers' contract rights to "primarily benefit a particular economic actor in the farm economy"). The City's repeated refrain that Plaintiffs concede they can recoup any losses by raising consumer prices is false—Plaintiffs allege that they may have to renegotiate contracts and/or reduce services, resulting in irreparable economic harm as well as harm to Plaintiffs' goodwill and reputation in the City. Dkt. 1 ¶ 100. Further, the basic law of supply and demand dictates that raising consumer prices would lead to fewer sales and prevent TPPs from fully recouping their losses, which would also result in reduced orders for restaurants and decreased earnings for delivery drivers. Dkt. 1 ¶ 104.

**Plaintiffs State a Takings Clause Claim**. The City may not take private property for public use without just compensation. U.S. Const. amend. V; N.Y. Const. art. I, § 7. Plaintiffs' "contracts are property" under the Takings Clause. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003 (1984). The Supreme Court has "eschewed" a set formula for identifying when a contract-impairing law effects a taking, but three factors have "particular significance": (1) the regulation's economic impact; (2) the extent of interference with investment-backed expectations; and (3) the character of the governmental action. *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224–25 (1986). Plaintiffs allege sufficient facts to support each factor, and the City's factual disputes are unsuited to resolution at the pleadings stage. Plaintiffs cannot cover their costs under the Ordinance, which will likely force Plaintiffs to renegotiate or terminate their contracts. Dkt. 1 ¶ 100. When Plaintiffs entered into their contracts, they had no reason to expect a permanent price-fixing law: many contracts were entered into *before* the imposition of any temporary cap, and Plaintiffs reasonably expected any temporary cap to expire with the end of a declared public-health emergency. *Id.* ¶¶ 103, 119–20. Yet the Ordinance forces TPPs to permanently subsidize a favored local industry.

GIBSON DUNN

**Plaintiffs State a Police Power Claim**.  The City may enact laws protecting the "health," "safety," and "well-being" of its citizens.  N.Y. Const. art. IX, § 2(c)(1); N.Y. Mun. Home Rule Law § 10.  However, a City law "must bear a reasonable relationship to the objective sought to be promoted, i.e., public safety, health or welfare." *Albany Area Builders Ass'n v. Town of Guilderland*, 141 A.D.2d 293, 298 (N.Y. App. Div. 1988).  Because the Ordinance advances none of these—indeed, it will *undermine* the public welfare—it is not a valid exercise of New York City's police power.  *Id.*; Dkt. 1 ¶¶ 131–37.

**Plaintiffs State Due Process and Equal Protection Claims**.  To comport with due process, laws must rationally relate to a legitimate legislative purpose.  *Winston v. City of Syracuse*, 887 F.3d 553, 566 (2d Cir. 2018).  Similarly, laws that treat groups differently must bear a rational relation to a legitimate end.  The Ordinance violates due process because it is arbitrary and confiscatory in nature and intended to harm TPPs, forcing them to subsidize certain restaurants' profit margins by capping their ability to charge reasonable and competitive commissions for their services.  Dkt. 1 ¶ 146.  And although not even a temporary price-fixing law was justified by the COVID-19 pandemic, there is even less justification for a permanent law.  *Id.* ¶¶ 144, 147.  And the Ordinance is discriminatory because third-party vendors and smaller TPPs are similarly situated yet not subject to price controls.[1]  *Id.* ¶¶ 160–61.

**Plaintiffs State a Dormant Commerce Clause Claim**.  Cities may not unjustifiably discriminate against interstate commerce.  *Am. Bookseller's Found. v. Dean*, 342 F.3d 96, 102 (2d Cir. 2003).  If a law favors local economic interests over out-of-state interests, courts generally strike it down "without further inquiry." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986).  Even if a law appears evenhanded, when it in fact discriminates against interstate commerce, a city must prove that the law serves a legitimate local purpose that could not be served by available nondiscriminatory means.  *Maine v. Taylor*, 477 U.S. 131, 138 (1986).  Here, the Ordinance openly discriminates against interstate commerce by regulating only "website[s], mobile application[s] or other internet service[s]" that provide certain services to at least "20 food service establishments located in the city."  N.Y.C. Admin. Code § 20-845.  Those left unregulated are almost certainly local platforms.  Further, the City Council has admitted the Ordinance is designed to favor local restaurants at the expense of out-of-state TPPs.  Dkt. 1 ¶ 177 (Council Member Gjonaj explaining that because New York restaurants pay New York taxes "it's more important that we protect them instead of . . . Grubhub or the other providers").  And Council Member Gjonaj made clear that the Ordinance was a precursor to "pass[ing] the full set of bills that were introduced earlier this year on the primary relief" to New York restaurants that "use the service of these venture capital backed Silicon Valley Tech behemoths." *Id.*  The City Council followed through on that promise in passing permanent commission caps.

For these reasons, the Court should deny the City's request to move to dismiss.  Plaintiffs respectfully reserve their rights to amend the Complaint under Rule 15.

---

[1] The City argues that the exclusion of platforms serving fewer than 20 restaurants will soon no longer be relevant.  However, the Complaint's claims clearly apply to, and seek recovery for, both the substantial harm caused by the current so-called "temporary" Ordinance *and* the permanent caps that take effect in January.

**GIBSON DUNN**

Respectfully submitted,

/s/ *Anne Champion*
Anne Champion

cc: All counsel of record (via ECF)