

**THE CITY OF NEW YORK**

**GEORGIA M. PESTANA**
*Corporation Counsel*

**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**Darren Trotter**
Administrative Law Division
(212) 356-1662
Facsimile: (212) 356-2019
dtrotter@law.nyc.gov

February 14, 2022

**BY ECF**
Hon. Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: <u>Doordash, Inc., et al. v. City of New York</u>, 21-CV-7564 (GHW)

Dear Judge Woods:

      We are attorneys in the office Georgia M. Pestana, Corporation Counsel of the City of New York, counsel for the City of New York ("City") in the above-referenced action. Defendant writes to respectfully request a pre-motion conference to discuss defendant's anticipated motion to dismiss the First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P 12(b)(6) in accordance with Section 2(C) of Your Honor's Individual Rules of Practice in Civil Cases.

**<u>Factual Background</u>**:
      This case stems from plaintiffs' challenge to New York City Administrative Code ("Admin. Code") §§ 20-563.3(a) and (b), which deems it unlawful for a third-party food delivery platform ("TPP") to: (1) charge a restaurant a fee in excess of 15% of each online order; and (2) charge a "food service establishment any fee or fees, other than a delivery fee and a transaction fee, for the use of their service that totals more than 5% of the purchase price of each online order." The FAC alleges that these provisions of the Administrative Code violate various provisions of federal and state law. For the reasons set forth herein, plaintiffs' claims fail.

**<u>Legal Basis for Dismissal</u>**[1] [2]

---

[1] Plaintiffs bring various State law claims, several of which are assessed under the same framework as their federal counterparts and fail for the same reasons. At the very least, this Court should decline supplemental jurisdiction over those State law claims in the absence of any viable federal claims. See <u>Lanza v. Merrill Lynch & Co.</u>, 154 F.3d 56, 61 (2d Cir. 1998) (recognizing that state law claims should generally be dismissed when all federal claims are dismissed).

[2] The FAC purports to challenge the permanent imposition of a commission cap for services rendered by TPPs set forth in Administrative Code §§ 20-563.3(a) and (b) as well as prior temporary commission caps, which exempted TPPs serving 20 or fewer restaurants. On January 24, 2022, the permanent commission caps went into effect superseding all prior temporary iterations of the law. The permanent commission caps are applicable to all TPPs irrespective of their size.

**Plaintiffs Fail to Plausibly Allege a Contracts Clause Violation:** To state a claim for a Contracts Clause violation, the FAC must plausibly allege that a challenged law substantially impairs a contractual relationship and, if so, that the law is not reasonably and appropriately drawn to advance a legitimate public purpose. Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 368 (2d. Cir. 2006) (cites omitted). If there is a substantial impairment, then the Court must conduct a "careful examination of the nature and purpose" of the challenged law "[d]espite the customary deference courts give to state laws directed to social and economic problems." Melendez v. City of New York, No. 20-4238-cv, 2021 U.S. App. LEXIS 32327, at *84-85 (2d Cir. October 28, 2021) (cite omitted). Plaintiffs' Contracts Clause claim fails. There is no substantial contractual impairment where, as here, the contracts are terminable at will and do not provide a guaranteed stream of revenue or protection from future regulation. Moreover, plaintiffs belong to a "constantly evolving" industry, FAC ¶ 33, subject to developing regulation, and the challenged law was "foreseeable as the type of law that would alter contract obligations." Energy Reserves Group v. Kan. Power & Light Co., 459 U.S. 400, 416 (1983). Because plaintiffs can offset lost revenue in other ways, FAC ¶ 122, and provide no factual support that raising consumer fees will lead or has led to fewer orders, plaintiffs cannot reasonably maintain that a fifteen percent cap on delivery commissions and a five percent cap on other fees constitutes a significant limitation on their existing contracts. Nonetheless, the law has a legitimate public purpose. By aiding restaurants, which the City has identified as vital to communities and important engines of local economies, the law promotes the general welfare. Capping commissions is a reasonable and appropriate means for advancing this legitimate public purpose.

**Plaintiffs Fail to Plausibly Allege a Regulatory Taking:** "Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in Penn Central…" Sherman v. Town of Chester, 752 F.3d 554, 564 (2d. Cir. 2014).[3] Plaintiffs' claim fails. First, "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." Concrete Pipe & Prods. Of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 645 (1993). Moreover, as plaintiffs can offset any purported loss in revenue in other ways, the FAC fails to plausibly allege any diminution in value whatsoever.[4] Second, the FAC does not allege any facts establishing that plaintiffs had distinct investment-backed expectations as: (1) their contracts with restaurants are terminable at any time and (2) it is clear from the FAC that robust public debate over commission caps rendered such regulation foreseeable. This is especially true considering the fact that plaintiffs previously operated under a temporary cap for more than a year.

---

[3] The Penn Central Court articulated three guideposts for evaluating whether a regulation amounts to the functional equivalent of a physical appropriation: (1) "the economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) the "character of the governmental action," in particular "whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" Penn Central Trans. Co. v. New York City, 438 U.S. 104, 124 (1978).

[4] It should also be noted that the entire basis for plaintiffs' takings claim is a purported reduction in profits. See e.g. FAC ¶ 148. "However, the Second Circuit has 'rejected the notion that loss of profit—much less loss of a reasonable return—alone could constitute a taking.'" 335-7 LLC v. City of New York, 524 F. Supp. 3d 316, 332 (S.D.N.Y. 2021) (citing Park Ave. Tower Assocs. v. City of New York, 746 F.2d 135, 139-40 (2d Cir. 1984)).

**Plaintiffs Fail to Plausibly Allege that the City Exceeded its Police Powers:** N.Y. Const. Art. IX, § 2(c)(i) provides local governments with the "power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government…." Local governments are further authorized to adopt and amend local laws relating to advancing the well-being of City residents. N.Y. Const. Art. IX, § 2(c)(ii)(10).[5] This constitutes a broad conveyance of police powers. "[I]f such laws have substantial relation to matters over which legislative power is vested in the local legislative body…they are valid." People v. Lewis, 295 N.Y. 42, 49 (1945). Here, plaintiffs allege that the law at issue exceeds the City's police power because it does not promote the general welfare. FAC ¶ 160. However, for the reasons set forth herein, the law promotes the general welfare of communities and local economies and is reasonably and substantially related to that purpose.

**Plaintiffs Fail to Plausibly Allege a Due Process Violation**: A price control satisfies due process if it is not "arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt…." Pennell v. City of San Jose, 485 U.S. 1, 11 (1988) (quotes omitted). For the reasons set forth herein, the law at issue is reasonably drawn to serve a legitimate public interest. Moreover, plaintiffs' ability to offset any purported losses incurred as a result of commission caps in other ways is fatal to their claim that the law is confiscatory.

**Plaintiffs Fail to Plausibly Allege an Equal Protection Violation:** Where a law's classifications do not involve a suspect classification or a fundamental right, as here, the law is constitutionally valid if "there is any conceivable rational basis justifying [the] distinction." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 309 (1993); Winston v. City of Syracuse, 887 F.3d 553, 560 (2d Cir. 2018). Here, the FAC alleges an equal protection violation as the City does not regulate other industries serving restaurants. Plaintiffs fail to provide factual support for their allegation that TPPs are similarly situated to other industries such as raw ingredient suppliers, equipment suppliers, or point-of-sale system vendors. Even if they were similarly situated, the City has a rational purpose for only regulating third-party delivery platforms: curbing pervasive and excessive commissions. This concern does not arise when considering restaurants' relationships with other industries.

**Plaintiffs Fail to Plausibly Allege a Dormant Commerce Clause Violation:** To demonstrate a violation of the dormant Commerce Clause, plaintiffs must plausibly allege that the law at issue: (1) "has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question," (2) "clearly discriminates against interstate commerce in favor of intrastate commerce," or (3) "imposes a burden on interstate commerce incommensurate with the local benefits secured." Jones v. Schneiderman, 974 F. Supp. 2d 322, 349 (S.D.N.Y. 2013) (quotes and cites omitted). Plaintiffs' claim fails. First, the law does not regulate conduct nor directly control commerce outside the City. Second, the law does not discriminate against interstate commerce in favor of intrastate commerce as the law's prohibitions apply equally to all TPPs irrespective of where they are headquartered. Third, the law at issue does not impermissibly burden interstate commerce as it is nondiscriminatory and applies equally to all TPPs.[6]

---

[5] see also Municipal Home Rule Law § 10(1)(ii)(a)(12).

[6] At best, the FAC alleges an incidental burden on interstate commerce, which is insufficient for purposes of maintaining a Commerce Clause claim. Pike v. Bruce Church Inc., 397 U.S. 137, 142 (1970).

- 4 -

For these reasons, defendant seeks to move to dismiss the FAC in its entirety.

Respectfully submitted,

/s/

Darren Trotter
Kevin Collins
Assistant Corporation Counsels


cc: All Counsel (via ECF)