UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DOORDASH, INC., GRUBHUB INC., and
PORTIER, LLC,

                                                                                    21-cv-7564 (GHW)

                                   Plaintiffs,

   - against -


CITY OF NEW YORK,

                                  Defendant(s).

------------------------------------------------------------------------X

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

                                                     HON. SYLVIA HINDS-RADIX
                                                   Corporation Counsel of the
                                                   City of New York
                                                   Attorney for Defendant
                                                   100 Church Street
                                                   New York, New York 10007
                                                   Tel: (212) 356-1662

Michelle Goldberg-Cahn
Darren Trotter
Kevin Collins,
    *of Counsel.*

Jessica Katzen,
    *on the brief*

April 11, 2022

## TABLE OF CONTENTS

                                                                                                  **Page**

TABLE OF AUTHORITIES ..................................................................................................ii

    A.    PLAINTIFFS' CONTRACTS CLAUSE CLAIM FAILS..........................................1

          i.    There is No Substantial Impairment ................................................................1

          ii.    The Ordinance Has a Significant and Legitimate Public Purpose.................................................................................................................1

          iii.    The Ordinance is Drawn in an Appropriate and Reasonable Way.................................................................................................................3

    B.    PLAINTIFFS' REGULATORY TAKINGS CLAIM FAILS ....................................4

    C.    THE ENACTMENT OF THE ORDINANCE DOES NOT EXCEED THE CITY'S POLICE POWER ..................................................................6

    D.    PLAINTIFFS' DUE PROCESS CLAIM FAILS ......................................................6

    E.    PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS .........................................7

    F.    THE ORDINANCE DOES NOT VIOLATE THE COMMERCE CLAUSE ..................................................................................................9

CONCLUSION............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

335-7 LLC v. City of New York,
   524 F. Supp. 3d 316 (S.D.N.Y. 2021)......................................................................5

A&P v. Town of E. Hampton,
   997 F. Supp. 340 (E.D.N.Y. 1998) .........................................................................6

Allied Structural Steel Co. v. Spannaus,
   438 U.S. 234 (1978)................................................................................................1

Association of Equipment Manufacturers v. Burgum,
   932 F.3d 727 (8th Cir. 2019) ..................................................................................2

CTS Corp. v. Dynamics Corp. of America,
   421 U.S. 69 (1987)..................................................................................................9

Elmsford Apt. Assocs., LLC v. Cuomo,
   469 F. Supp. 3d 148 (S.D.N.Y. 2020) ....................................................................4

Energy Reserves Group, Inc. v. Kansas Power & Light Co.,
   459 U.S. 400 (1983)................................................................................................3

F.C.C. v. Beach Commc'ns, Inc.,
   508 U.S. 307 (1993)................................................................................................7

Good Humor Corp. v. Long Beach,
   22 N.Y.S.2d 3820 (1940)........................................................................................6

HRPT Props. Tr. v. Lingle,
   715 F. Supp. 2d 1115 (D. Haw. 2010) ...............................................................2, 3

Melendez v. City of New York,
   16 F.4th 992 (2d Cir. 2021) ........................................................................1, 2, 3, 4

N.Y.S. Land Tit. Ass'n v. N.Y.S. Dep't of Fin. Servs.,
   169 A.D.3d 18 (1st Dep't 2019), Opp. Memo ........................................................6

Penn Central Transp. Co. v. New York City,
   438 U.S. 104 (1978).............................................................................................4, 6

Pennell v. San Jose,
   485 U.S. 1 (1988)....................................................................................................7

Pike v. Bruce Church,
    397 U.S. 137 (1970) ............................................................................................................10

Progressive Credit Union v. City of New York,
    889 F.3d 40 (2d Cir. 2018) ....................................................................................................8

Rent Stabilization Ass'n v. Dinkins,
    805 F. Supp. 159 (S.D.N.Y. 1992), aff'd, 5 F.3d 591 (2d Cir. 1993) ........................................5

RHC Operating LLC v. City of New York, et al.,
    2022 U.S. Dist. LEXIS 58925 (S.D.N.Y. Mar. 30, 2022) ....................................................1, 3

Sensational Smiles, LLC v. Mullen,
    793 F.3d 281 (2d Cir. 2015) ....................................................................................................8

Williamson v. Lee Optical of Oklahoma,
    348 U.S. 483 (1955) ................................................................................................................8

Defendant City of New York submits this Reply Memorandum of Law in further support of its Motion to Dismiss the First Amended Complaint ("FAC").

A. **Plaintiffs' Contracts Clause Claim Fails**

There is No Substantial Impairment

Relying on Melendez v. City of New York, 16 F.4th 992, 1047 (2d Cir. 2021), plaintiffs argue that the Ordinance operates as a substantial impairment on their contracts. Opp. Mem. at 5. However, Melendez is distinguishable and the contractual impairment at issue herein is far less substantial. See Opening Brief at 11-12. Plaintiffs further claim that commission caps were not foreseeable because no law had previously imposed price controls on third-party platforms. Opp. Mem. at 6-7. However, that plaintiffs are part of a developing industry previously free from regulation does not alter the fact that plaintiffs publicly acknowledged that future regulation of TPPs was highly likely. Opening Brief at 5. Regulation of the fees that may be charged by TPPs was entirely foreseeable as a regulation to be imposed on this burgeoning industry.

The Ordinance Has a Significant and Legitimate Public Purpose

Citing Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 242 (1978), plaintiffs claim that the Ordinance does not serve a public purpose because it is not intended to protect "a broad, generalized economic or social problem" and instead benefits the restaurant industry. 438 U.S. at 242; Opp. Mem. Brief at 8-11. "But the two are not mutually exclusive. The [Ordinance] benefits [restaurants], and by doing so, addresses a broad economic problem: economic distress caused by the pandemic" and the documented pre and post-pandemic decline in the restaurant industry. RHC Operating LLC v. City of New York, et al. ("RHC"), 2022 U.S. Dist. LEXIS 58925 at *31 (S.D.N.Y. Mar. 30, 2022) (distinguishing Melendez and holding that the City's Severance Law, which requires hotel employers to provide severance pay to their hotel employees, had a significant and legitimate public purpose and did not violate the Contracts Clause despite plaintiff's claim that

the Severance Law only "benefits certain hotel employees" and that the law was not enacted for the general welfare); see also Trotter Decl. Ex. F at 3.[1] As such, it was rational for City Council to enact a law to prevent the social and economic devastation communities would experience if restaurants were forced to close.[2]

Plaintiffs' reliance on two inapposite, out of circuit cases does not alter this fact. See Association of Equipment Manufacturers v. Burgum, 932 F.3d 727, 731 (8th Cir. 2019) ("AEM"); HRPT Props. Tr. v. Lingle, 715 F. Supp. 2d 1115, 1139 (D. Haw. 2010) ("HRPT"). Significantly, in AEM, the Court declined to find a significant and legitimate purpose because: (1) the law[3] did not include "well-supported finding or purposes" and (2) the law provided mere "incidental public benefits" by benefitting farm equipment dealers and not farmers or rural communities. In contrast, the Ordinance at issue herein is supported by ample legislative findings setting forth the factual bases and purpose of the legislation. See generally Trotter Decl. Exs. A, F, G, and H. In HRPT, while the court found that the stated purpose of the law[4] at issue—stabilizing Hawaii's economy— was legitimate, the law was not "reasonably designed to promote any public purpose." 715 F.Supp.2d at 1137-40. Contrary to plaintiffs' claim, HRPT does not stand for the proposition that government may never seek to assist an industry in decline; rather, the law at issue therein was

---

[1] It should also be noted that, in Melendez, the Second Circuit found that "the City assert[ed] a legitimate public purpose that appears at least plausible on the pleadings record" notwithstanding the allegations that its intent was only to benefit a favored group: commercial-lease guarantors. Opp. Mem. at 11; 16 F.4th at 1037-38.

[2] Plaintiffs argue that Council's "alleged purpose would justify economic protectionism of any industry that employs many people, and the City cites no authority holding that it can favor one group over another because the first group employs more local workers." Opp. Mem. at 10. However, the purpose of the statute is not to favor one group over another; rather, the Ordinance favors the general welfare of communities. Opening Brief at 7 n.4.

[3] The law at issue was a North Dakota statute that prohibited farm equipment manufacturers from imposing certain obligations on dealers notwithstanding that these obligations were set forth in existing contracts. AEM, 932 F.3d at 729.

[4] The law at issue was a Hawaiian statute that required any appraiser involved in a rent determination under an HRPT lease to consider factors that were not originally required by HRPT's leases prior to the law's enactment. HRPT, 715 F. Supp. 2d at 1118.

invalidated because, as written, it failed to address the purpose for its passage. 715 F. Supp. 2d at 1138. As set forth in defendant's Opening Brief, that is not the case here.[5]

Finally, that the Ordinance is now permanent and not a pandemic related measure does not vitiate the Ordinance's significant and legitimate public purpose. See Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 412 (1983) ("…[T]he Court has indicated that the public purpose need not be addressed to an emergency or temporary situation.").

The Ordinance is Drawn in an Appropriate and Reasonable Way

Plaintiffs maintain that Melendez requires a finding that the Ordinance is not reasonably and appropriately drawn. However, for the reasons set forth in defendant's Opening Brief, at 8-12, the Ordinance differs from the law evaluated in Melendez as permanent contracts are not at issue and the Ordinance merely reduces the commissions plaintiffs may charge. 16 F.4th at 1046.

Plaintiffs' remaining arguments are unavailing. First, there is a clear connection between "the stated public interest and the Ordinance." Opp. Mem. at 12. Indeed, "the legislative record . . . links the law" to its public purpose of promoting the general welfare, citing relevant data and statistics of the importance of the restaurant industry to the City and promotes their survival by curbing excessive commissions. RHC, 2022 U.S. Dist. LEXIS 58925 at *33-*34; see generally Trotter Decl. Exs. A, F, G, and H. Moreover, the legislative findings establish that the Ordinance's means fit its purpose and under Melendez, that withstands scrutiny. 16 F.4th at 1041 (recognizing that "deference is not warranted in the absence of some record basis to link purpose and means that, otherwise, appears missing.").[6]

---

[5] Plaintiffs also claim that the Ordinance's purpose conflicts with the legislative history. Opp. Mem at 10. This claim is belied by the record. See generally Trotter Decl. Exs. A, F, G, and H. Council did not "solely rely on statements from 'special-interest groups' to establish a legitimate public purpose." Opp. Mem. at 10; see Trotter Decl. Ex. F at 8-16 (noting individual testimony from restaurateurs and small businesses acknowledging the detrimental impact excessive commission rates had on their businesses); see also Trotter Decl. Exs. A, H.

[6] See also DoorDash, 2022 U.S. Dist. LEXIS 52277 at *48-*49 ("Here, unlike in Melendez, the Ordinance's findings 'link' its purpose and means.").

Second, plaintiffs argue that the "allocation of the economic burden" of the Ordinance is unfair. Melendez, 16 F.4th at 1042; Opp. Mem. at 12. But, in Melendez, the Court noted that landlords were in no way responsible for the economic problem that the challenged law sought to address, distinguishing it from cases where—as here—permanent restrictions were upheld because impairment was tailored to the party causing the harm. 16 F.4th at 1042 (cites omitted)[7].

Third, plaintiffs claim that the Ordinance fails to provide for compensation. Opp. Mem. at 12. However, Melendez rejected the argument that "compensation is always necessary to defeat a Contracts Clause challenge." 16 F.4th at 1046. Finally, Melendez recognized that it was the "the totality" of all the features assessed therein that precluded dismissal of the Contracts Clause claim. 16 F. 4th at 1038. Therefore, even if this Court finds that some, but not all of the features present in Melendez are present here, it is still proper to defer to the legislature.

**B.      Plaintiffs' Regulatory Takings Claim Fails**

Plaintiffs maintain that the first Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978) factor—the economic impact of the Ordinance—favors them because the FAC alleges more than "mere diminution" in the value of their contracts. See Opp. Mem. at 15-16. Specifically, plaintiffs maintain, absent any support, that the Ordinance forces them to operate "at a loss," which is sufficient for purposes of plausibly alleging a regulatory takings claim. Id. Plaintiffs miss the mark. The relevant inquiry for assessing the economic impact of governmental regulation does not turn on profit margins. Rather, plaintiffs must plausibly allege that the Ordinance has "'effectively prevented [them] from making any economic use of [their] property.'" Elmsford Apt. Assocs., LLC v. Cuomo, 469 F. Supp. 3d 148, 165 (S.D.N.Y. 2020) (emphasis in original). At best, the FAC's allegations amount to a claim of lost profit, which is insufficient to state a takings claim.

---

[7] See also Ex. F at 8-11 (describing how TPPs have created the harm on restaurants by charging excessive fees).

335-7 LLC v. City of New York, 524 F. Supp. 3d 316, 336 (S.D.N.Y. 2021) ("Loss of profit alone does not constitute a taking.") (cites omitted); see also DoorDash, 2022 U.S. Dist. LEXIS 52277 at *18 (N.D. Cal. Mar. 23, 2022)[8] ("that the Ordinance reduced its commissions by as much as 50%, from 30% to 15%" was "not in and of itself sufficient to establish a regulatory taking.").

Notwithstanding the clear absence of allegations demonstrating loss beyond mere diminution, the Court in DoorDash determined that factual issues as to the San Francisco law's economic impact on plaintiffs remained. DoorDash, 2022 U.S. Dist. LEXIS 52277 at *18. Specifically, the Court determined that offsetting any purported revenue reduction caused by a cap on commissions through consumer fees "would cause fewer orders" thereby preventing plaintiffs from "fully recoup[ing] lost revenue." Id. As such, the Court in the San Francisco case could not conclude whether the Ordinance would have a substantial economic impact on plaintiffs. Id. Here, plaintiffs claim that they are entitled to the same outcome. Opp. Mem. at 14-15. However, it is well settled that an owner of property is not guaranteed a reasonable return on investment. Rent Stabilization Ass'n v. Dinkins, 805 F. Supp. 159, 163 (S.D.N.Y. 1992), aff'd, 5 F.3d 591 (2d Cir. 1993). Moreover, plaintiffs' claim that recouping purported losses as a result of the Ordinance through consumer fees will result in fewer future orders is entirely speculative. Significantly, prior to the imposition of a permanent commission cap, plaintiffs operated under the temporary commission cap for more than a year. The FAC does not allege a decrease in orders as a result.

As to reasonable investment backed expectations, plaintiffs maintain that because they have previously been unregulated and their at-will contracts "typically last for years," factual issues preclude dismissal of this claim. Opp. Mem. at 16. However, these expectations constitute

---

[8] In this matter, plaintiffs herein challenged a similar San Francisco Ordinance that capped TPP commission rates.

5

the type of unilateral expectations Courts have rejected as a matter of course.[9] Finally, as to the third Penn Central factor, it is clear the Ordinance does not unfairly single out plaintiffs but rather adjusts the benefits and burdens of economic life through a public program to promote the common good. Opening Brief at 15-16; see also DoorDash, 2022 U.S. Dist. LEXIS 52277 at *57-58.

### C. The Enactment of the Ordinance Does Not Exceed the City's Police Power

As set forth in defendant's Opening Brief, the Ordinance has a legitimate public purpose and is an appropriate exercise of the City's police powers. Plaintiffs' arguments in opposition are unavailing. First, plaintiffs' reliance on People v. Cohen, 5. N.E.2d 835, 835 (N.Y. 1936), Good Humor Corp. v. Long Beach, 22 N.Y.S.2d 3820 (1940), and A&P v. Town of E. Hampton, 997 F. Supp. 340 (E.D.N.Y. 1998) is misplaced. In those matters, the legislature failed to demonstrate that the law was enacted for to benefit the general welfare. Here, Council found that the restaurant industry is both "a key contributor to the City's economy" and a "vital source of employment." See Trotter Decl. Ex. F at 3. Thus, such findings clearly support the Council's view that it enacted the law for the benefit of the general welfare. Second, this legislative finding passes muster under the highly deferential standard Courts employ when reviewing challenges to laws enacted pursuant to a municipality's police power. Third, plaintiffs' reliance on N.Y.S. Land Tit. Ass'n v. N.Y.S. Dep't of Fin. Servs., 169 A.D.3d 18, 32 (1st Dep't 2019), Opp. Memo at 19-20), has no bearing on this matter as it did not evaluate any action taken pursuant to the City's police powers.

### D. Plaintiffs' Due Process Claim Fails

For the reasons set forth herein and defendants' Opening Brief, the Ordinance articulates a legitimate government purpose and is therefore neither arbitrary nor irrational. See generally

---

[9] In reaching a different result, the Court in DoorDash relied upon its analysis of plaintiffs' Contract Clause claim in finding that factual issues remained as to whether plaintiffs' investment backed expectations were reasonable. 2022 U.S. Dist. LEXIS 52277 at *57. However, the standards for assessing substantial impairment of a contract and interference with investment backed expectations are not the same.

Opening Brief.[10] Notwithstanding, plaintiffs maintain that the Ordinance nevertheless violates due process because it is "confiscatory" and deprives plaintiffs of a fair return on their investment. Opp. Mem. at 21-22. In making this claim, plaintiffs rely on the Northern District of California Court's decision in DoorDash, which found that issues of fact remained as to whether the commission cap was confiscatory. DoorDash, 2022 U.S. Dist. LEXIS 52277 at *57-58.[11] However, here plaintiffs' principal claim is not that, in the face of the commission cap, they will be deprived of a reasonable return on their investments. Rather, plaintiffs allege that, under the commission caps, it is not cost effective for them to provide a particular suite of services as, if they continue to do so, they will operate at a loss. FAC ¶ 5. However, plaintiffs are under no obligation to provide restaurants with a particular suite of services. As such, to the extent plaintiffs operate at a loss, it is because they choose to do so and not because the law leaves them with no alternative.[12]

E.     **Plaintiffs' Equal Protection Claim Fails**

Plaintiffs have not met the heavy burden of negating every conceivable rational basis that support the commission caps. See F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993). City Council passed the Ordinance to address threats posed to City restaurants by excessively high commissions charged by TPPs. Further, the percentages were rationally chosen because they were consistent with what TPPs previously charged restaurants. See Opening Brief at 9.

---

[10] The Court in DoorDash determined that San Francisco's nearly identical commission cap constituted a legitimate government purpose and did not offend due process protections. 2022 U.S. Dist. LEXIS 52277 at *63-64.
[11] It should also be noted that the Court in DoorDash relied heavily on California precedent in reaching its determination on plaintiffs' Due Process claim. Here, plaintiffs do not point to any comparable New York precedent in support of their claim.
[12] Plaintiffs' reliance on cases evaluating due process challenges to rent stabilization laws is of no import. In those matters, the reasonableness of the rates of return for landlords under the stabilization laws are weighed against the landlord's investment—the costs associated with obtaining and maintaining a particular building. See, e.g., Pennell v. San Jose, 485 U.S. 1 (1988). Here, no such investment has been made by plaintiffs. Instead, plaintiffs have entered into at will contracts with restaurants for a particular set of services they are free to terminate if permissible commission rates do not yield a profit acceptable to plaintiffs.

Plaintiffs do not plausibly state a claim that a cap on marketing services is irrational because it applies to TPPs but not other industries offering the same non-delivery services. Plaintiffs still fail to allege how TPPs are similarly situated to other businesses. Specifically, plaintiffs have not established how large TPPs that control the lion's share of the food delivery market are "prima facie identical" to companies providing technology systems, marketing, sales and consumer analytics (even if some of those companies use commission fees) but not delivery services. Progressive Credit Union v. City of New York, 889 F.3d 40, 49 (2d Cir. 2018).[13]

Even if TPPs were similarly situated to businesses that provide restaurants with non-delivery services, the City has a rational basis for regulating TPPs but not other industries. TPPs have disproportionately more power over restaurants than do providers of other goods and services, such as the ability to set prices in the market. And as TPPs increasingly account for larger percentages of restaurants' businesses, they are left with no option but to subscribe for TPP services in order to remain in business. See Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489 (1955) ("The legislature may select one phase of one field and apply a remedy there, neglecting others."). And even if this Ordinance did reflect the City's favoring of other industries over TPPs, the Ordinance would still be "certainly rational in the constitutional sense." Sensational Smiles, LLC v. Mullen, 793 F.3d 281, 287 (2d Cir. 2015) (for a court to find unconstitutional a state's favoring certain groups over others on economic grounds "would be to interpret the Fourteenth Amendment in a way that is destructive to federalism and to the power of the sovereign states to regulate their internal economic affairs").[14]

---

[13] Plaintiffs also fail to state an Equal Protection claim based on the Temporary Ordinance's exemption for TPPs serving fewer than 20 restaurants because they do not show that plaintiffs—corporations dominating market share nationwide—are similarly situated to small delivery services.

[14] Plaintiffs misconstrue the Sensational Smiles Court's statement that "a court intent on sniffing out 'improper' economic protectionism will have little difficulty finding it." Opp. Mem. at 23 n. 19. The Court in Sensational Smiles criticized the high level of judicial scrutiny suggested by the plaintiffs, and instead buttressed a more deferential approach for analyzing state laws. 793 F.3d at 287.

Finally, plaintiffs' allegation that there is no conceivable legitimate purpose besides animus for regulating TPPs is incorrect. The Ordinance was passed in response to evidence that restaurant orders are increasing, plaintiffs' platforms are responsible for ninety-nine percent of online food orders, and restaurants' profit margins are diminishing. The Ordinance was not driven by an attempt to harm TPPs, or by a misunderstanding of the services plaintiffs offer,[15] but by the City's legitimate desire to curb excessive fees and protect restaurants and consumers.[16]

**F.     The Ordinance does not Violate the Commerce Clause**

Plaintiffs have failed to plausibly allege that the Ordinance discriminates against interstate commerce, let alone that the Ordinance constitutes a <u>per se</u> violation of the Commerce Clause, because they allege no facts establishing that the temporary or permanent versions of the Ordinance discriminate against interstate commerce facially,[17] in purpose, or in effect. The Ordinance was enacted to ensure that the vitality of New York City restaurants was not threatened by excessive fees, and not, as plaintiffs erroneously suggest, to shift revenue from out-of-state businesses to local businesses. In fact, City Council chose the cap percentages based on data reflecting what TPPs were already charging, illustrative of City Council's attempt to prevent significantly detrimental effects on TPPs. Further demonstrative of the Ordinance's purpose is the fact that it applies equally to all TPPs serving New York City restaurants, regardless of where they are headquartered. See <u>CTS Corp. v. Dynamics Corp. of America</u>, 421 U.S. 69, 88 (1987).

---

[15] The Court need only to look at the Ordinance for evidence of City Council's understanding of plaintiffs' services. City Council bifurcated the commission cap, adopting different caps for delivery and marketing services, reflecting its understanding of the different services offered.

[16] It should further be noted that despite plaintiffs' claims of animus and evidence of legislators' statements harshly criticizing TPPs, the Court in <u>DoorDash</u> dismissed the Equal Protection claim. 2022 U.S. Dist. LEXIS at *70–72.

[17] Plaintiffs have not plausibly alleged that the Temporary Ordinance facially discriminated against interstate commerce because (1) plaintiffs have not shown that plaintiff TPPs are similarly situated to TPPs serving fewer than 20 restaurants, and (2) have provided no factual basis for the assumption that smaller TPPs are more likely to be in-state entities.

The effect of the Ordinance also has not been the shifting of costs of regulation to out-of-state industry actors. Under the temporary fee caps, TPP profits actually increased. See Opening Brief at 1. Plaintiffs' nonspecific claims of reduced profits do not constitute allegations of economic effect of the caps. See Freedom Holdings, 375 F.3d at 220 (finding no violation of the Commerce Clause where state law was not directed solely at out-of-state economic interests, in-state economic interests were not exempted, and revenues were not used to subsidize economic interests in competition with out-of-state economic interests).[18]

Finally, even if the Ordinance places an incidental burden on interstate commerce, that burden is not "clearly excessive" in relation to the putative local benefits. Pike v. Bruce Church, 397 U.S. 137, 142 (1970). Plaintiffs allege that the Ordinance eliminates their profits and forces them to modify contracts with restaurants. FAC ¶ 148. Plaintiffs' claim of lost profits is unsupported, and dubious considering that TPP profits increased while the temporary Ordinance was in place. The burden of modifying contracts with restaurants is minimal, as the contracts were at-will and could have been modified by restaurants at any time, and because TPPs are large companies with the resources to easily adjust contracts. The benefits of the temporary and permanent versions of the Ordinance—including supporting City restaurants, ensuring food access and promoting social distancing during the peak of the COVID-19 pandemic—certainly outweigh any minimal burden to TPPs.[19]

---

[18] As plaintiffs have not plausibly alleged that the Ordinance discriminates against interstate commerce, defendants are not subject to more demanding scrutiny, nor does the burden shift to defendants to establish that the statute serves a legitimate local purpose that could not have been served as well by alternative means. Nonetheless, the Ordinance was enacted to serve the legitimate local purpose of safeguarding restaurants from excessive fees, and the alternative means suggested by plaintiffs, such as tax relief, grants, and loans to local restaurants, would not advance the purpose of curbing excessive fees.
[19] As discussed above, alternatives such as loan programs or tax breaks to restaurants would not have advanced the City's purpose of curbing excessive fees, nor been a permanent and sustainable solution.

# CONCLUSION

For the reasons set forth above and in Defendant's Opening Brief, defendant respectfully requests that this Court grant its Motion to Dismiss the FAC in its entirety.

Dated:      New York, New York
               April 11, 2022

                                       HON SYLVIA HINDS-RADIX
                                       Corporation Counsel of the City of New York
                                       Attorney for City Defendant
                                       100 Church Street
                                       New York, New York 10007
                                       (212) 356-1662


                                              /s/
                                       Darren Trotter
                                       Kevin Collins
                                       Assistant Corporation Counsels