Exhibit 1

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into by and between the City of New York (the "City"), on its own behalf and, where relevant, on behalf of the New York City Department of Consumer and Worker Protection ("DCWP") and its Commissioner, DoorDash, Inc. ("DoorDash"), Grubhub Inc. ("Grubhub"), Uber Technologies, Inc. and Portier, LLC (collectively, "Uber"), and Relay Delivery, LLC ("Relay"). The aforementioned parties are also sometimes referred to below collectively as "Parties" and individually as a "Party." DoorDash, Grubhub, and Uber shall be jointly referred to as the "Companies." This Agreement is effective on the date the last one of the Parties has executed the Agreement and provided it to the other Parties (the "Effective Date").

## RECITALS

The Parties make this Agreement with reference to the facts and circumstances set forth below:

A.    On May 13, 2020, the New York City Council passed Intro. No. 1908-B. On May 26, 2020, the New York City Mayor signed Intro. No. 1908-B and Intro. No. 1908-B became Local Law 52 of 2020.

B.    On August 27, 2020, the New York City Council passed Intro. No. 2054-A. On September 14, 2020, the New York City Mayor signed Intro. No. 2054-A and Intro. No. 2054-A became Local Law 88 of 2020.

C.    On July 29, 2021, the New York City Council passed Intro. No. 2359-A. On August 30, 2021, Intro. No. 2359-A was returned unsigned by the New York City Mayor and Intro. No. 2359-A became Local Law 94 of 2021.

D.    On August 26, 2021, the New York City Council passed Intro. No. 2390. On September 27, 2021, Intro. No. 2390 was returned unsigned by the New York City Mayor and Intro. No. 2390 became Local Law 103 of 2021.

E.    Local Laws 52 of 2020, 88 of 2020, and 94 of 2021 temporarily capped the commissions third-party food delivery services could charge food service establishments for certain services; Local Law 103 of 2021 permanently capped the commissions third-party food delivery services could charge food service establishments for certain services (collectively the "Local Laws").

F.    On September 9, 2021, the Companies filed a complaint (the "Fee Cap Action") in the Southern District of New York ("SDNY Court"), in a case captioned *DoorDash, Inc. et al. v. City Of New York*, 21 Civ. 7564, alleging that the Local Laws violate the Contracts Clause, Takings Clause, Equal Protection Clause, Due Process Clause, and Dormant Commerce Clause of the U.S. Constitution, along with related provisions of the New York Constitution. The Companies also alleged that the Local Laws exceed the City's Police Power under the New York Constitution. The Companies sought a judicial determination that the Local Laws were invalid, a permanent injunction enjoining the City from enforcing the Local Laws, and damages.

G.    On January 24, 2022, the Companies filed the operative First Amended Complaint in the Fee Cap Action, alleging the same causes of action and seeking the same

relief.

H.      On March 7, 2022, the City filed a motion to dismiss the First Amended Complaint in the Fee Cap Action.

I.       On June 12, 2023, DCWP adopted a final rule ("Minimum Pay Rule"), which is codified at Chapter 7, Subchapter H of Title 6 of the Rules of the City of New York, governing minimum pay requirements for third-party food delivery workers in the City.

J.       On July 6, 2023, DoorDash and Grubhub jointly filed an Article 78 action in New York County Supreme Court ("Supreme Court") to annul the Minimum Pay Rule, and simultaneously moved for a temporary restraining order and preliminary injunction to enjoin implementation and enforcement of the Minimum Pay Rule. *See DoorDash, Inc. v. Dep't of Consumer & Worker Protection*, Index No. 155947/2023 (Sup. Ct. N.Y. Cnty.).  The same day, Uber filed an Article 78 action in the Supreme Court to annul the Minimum Pay Rule, and simultaneously moved for a temporary restraining order and preliminary injunction to enjoin implementation and enforcement of the Minimum Pay Rule. *See Uber Techs., Inc. v. Dep't of Consumer & Worker Protection*, Index No. 155943/2023 (Sup. Ct. N.Y. Cnty.).  The same day, Relay filed a separate Article 78 action (the "Relay Action") in the Supreme Court to annul the Minimum Pay Rule, and simultaneously moved for a temporary restraining order and preliminary injunction to enjoin implementation and enforcement of the Minimum Pay Rule. *See Relay Delivery, Inc. v. Dep't of Consumer & Worker Protection, et al.*, Index No. 155944/2023 (Sup. Ct. N.Y. Cnty.) The Article 78 actions by DoorDash, Grubhub, Uber, and Relay are collectively referred to as the "Minimum Pay Actions."

K.      On September 19, 2023, the SDNY Court denied the City's motion to dismiss in full in the Fee Cap Action.

L.       On September 28, 2023, the Supreme Court in the Minimum Pay Actions denied the Companies' motions for a preliminary injunction seeking to enjoin the City and DCWP from taking any steps to implement or enforce the Minimum Pay Rule, but granted Relay's request to preliminarily enjoin enforcement of the Minimum Pay Rule as applied to Relay pending the resolution of Relay's Article 78 proceeding on the merits.

M.      On September 29, 2023, the Companies moved in the Appellate Division, First Department for permission to appeal from the Supreme Court's September 28, 2023 Decision and Order denying their applications for a preliminary injunction in their Minimum Pay Actions. The Companies also sought and received an interim stay of implementation or enforcement of the Minimum Pay Rule pending resolution of the motion.

N.      On October 30, 2023, the City moved in the Appellate Division, First Department for permission to appeal from the Supreme Court's September 28, 2023 Decision and Order granting a preliminary injunction to Relay in its Minimum Pay Action.

O.      On November 30, 2023, a Justice of the Appellate Division, First Department denied the Companies' and the City's motions for leave to appeal and vacated the grant of interim relief pertaining to the Companies in the Minimum Pay Actions. Accordingly, DCWP implemented and began enforcing the Minimum Pay Rule as to the Companies. The preliminary injunction in the Relay Action remains in effect.

P.       The Parties recognize and agree that it is in their mutual best interests to resolve their differences as set forth below and have engaged in arm's-length negotiations in an effort to

resolve the Fee Cap Action and the Minimum Pay Actions.

Q.    The Parties also recognize and agree that the agreements and releases set forth below represent the Parties' compromise of disputed matters to avoid the further disruption and expense of the Fee Cap Action and the Minimum Pay Actions.

R.    The Parties wish to fully, finally, and completely resolve and dispose of all civil charges, claims, causes of actions, complaints, demands, liabilities, rights, and obligations, losses, or damages of any kind, known or unknown, arising out of or relating to the Fee Cap Action, the Local Laws, and the Minimum Pay Actions, provided, however that nothing herein shall prevent any of the City Parties from taking enforcement action over any violation of the Minimum Pay Rule by the Companies occurring on or after November 30, 2023, or any violation of the Minimum Pay Rule by Relay occurring on or after the date its obligations under the Minimum Pay Rule become effective, as set forth herein.

ACCORDINGLY, in view of the foregoing Recitals, and in consideration of the agreements and releases set forth below, the Parties agree as follows:

## 1.    SETTLEMENT TERMS

### 1.01    Amendment and Passage of Intro. 762.

1.01.1    The Office of the Speaker of the City Council of the City of New York shall make best efforts to (a) amend Intro. No. 762-B in conformance with the redlines attached here as Exhibit A, which would amend Sections 20-563 and 20-563.3 of the New York City Administrative Code, and (b) age the bill on the next available aging date following the Effective Date of this Agreement, to render it eligible for a full vote by the City Council of the City of New York ("City Council") at the next scheduled stated meeting following the aging of the bill. Intro. No. 762-B as amended in conformance, in its entirety, with Exhibit A shall be referred to as the "New Fee Cap Bill."

1.01.2    After the New Fee Cap Bill is duly "aged" in accordance with section 20(4) of the Municipal Home Rule Law and section 36 of the New York City Charter, the Office of the Speaker of the City Council and the Office of the Mayor of the City of New York ("Mayor") shall make best efforts to amend the New York City Administrative Code by passing the New Fee Cap Bill so that it "becomes law." For purposes of this Agreement, a bill "becomes law" on the date it is adopted in accordance with section 21 of the Municipal Home Rule Law and Section 37(b) of the New York City Charter. For the avoidance of doubt, the New Fee Cap Bill will not take effect until 30 days after it becomes law.

1.01.3    If for any reason the New Fee Cap Bill is not aged or does not become law pursuant to Sections 1.01.1 – 1.01.2 of this Agreement, this Agreement shall immediately terminate and thereafter be null and void.

1.01.4    If the New Fee Cap Bill is aged pursuant to Section 1.01.1 and placed on the City Council stated meeting agenda, then the Parties shall jointly move the SDNY Court to stay all proceedings in the Fee Cap Action and the Companies and Relay shall jointly move the Supreme Court to stay all

proceedings in the Minimum Pay Actions.  If the City Council fails to approve the New Fee Cap Bill at the next scheduled stated meeting following aging, then each of the Companies may withdraw any then-pending stay motion or seek to lift any stay of proceedings in the Fee Cap Action and the Minimum Pay Actions, and the City agrees it shall not oppose any such motion.  This provision shall survive any termination of the Agreement.

1.01.5  If the New Fee Cap Bill becomes law pursuant to Section 1.01.2, then within three business days, (a) the Companies and City shall file a stipulation with the SDNY Court to dismiss the Fee Cap Action with prejudice, and with each party bearing its own attorneys' fees and costs, in conformance with Exhibit B attached hereto; and (b) the Companies, Relay, and the City shall file stipulations with the Supreme Court to dismiss the Minimum Pay Actions, with prejudice, and with each party bearing its own attorneys' fees and costs, in conformance with Exhibits C, D and E. The parties understand and intend that dismissal of the Relay Action will also serve to extinguish the preliminary injunction in the Relay Action, and that Relay's obligations under the Minimum Pay Rule will likewise become effective on the day the operative provisions of the New Fee Cap Bill enter effect.

1.01.6  The SDNY Court shall retain jurisdiction over the Fee Cap Action and the parties shall submit to such jurisdiction to enforce the relevant terms of this Agreement through and including December 31, 2025 ("Retention-of-Jurisdiction Date").  From the date the New Fee Cap Bill becomes law pursuant to Section 1.01.2, through and including the Retention-of-Jurisdiction Date, should the New Fee Cap Bill be repealed, amended or otherwise modified in such a material way that the total of the "delivery fee," "basic service fee," and "transaction fee," as those fees are defined in the New Fee Cap Bill, are less than 23% or the maximum allowed "delivery fee," "basic service fee," "transaction fee," and "enhanced service fee," as those fees are defined in the New Fee Cap Bill, total less than 43%, the Companies may file a motion with the SDNY Court seeking to vacate the dismissal of the Fee Cap Action only. The Companies agree to make a good-faith effort to confer with the City at least 15 days before filing a motion to vacate the dismissal of the Fee Cap Action. The City reserves all rights to oppose such motion if the New Fee Cap Bill is not repealed, amended or otherwise modified in such a material way that the total of the "delivery fee," "basic service fee," and "transaction fee," as those fees are defined in the New Fee Cap Bill, are less than 23% and the maximum allowed "delivery fee," "basic service fee," "transaction fee," and "enhanced service fee," as those fees are defined in the New Fee Cap Bill, total less than 43%.

1.01.7  The Companies and Relay shall have no obligation to take any action upon the occurrence of an event specified in Section 1.01.4 or Section 1.01.5 of this Agreement unless the proposed local law that is timely aged (in the case of Section 1.01.4) or that becomes law (in the case of Section 1.01.5) is substantively identical in content to the text of the New Fee Cap Bill attached as Exhibit A, with the only deviations being deviations in form that do not affect the substance of Exhibit A.  If the local law that is

aged and becomes law is not substantively identical in content to the text of the New Fee Cap Bill attached as Exhibit A, with the only deviations being deviations in form that do not affect the substance of Exhibit A, then this Agreement shall immediately terminate and thereafter be null and void.

1.02    **Agreement Not to Challenge and Reservation of Rights.**

1.02.1  Subject to Section 1.02.2 below, the Companies shall not bring or support, financially or otherwise, any judicial proceedings seeking to challenge the New Fee Cap Bill's validity, implementation or enforceability, or otherwise seeking any judicial relief as against the New Fee Cap Bill.  For sake of clarity, nothing in this Agreement prevents the Companies from challenging any new legislation, passed after the New Fee Cap Bill, to the extent it alters the material substance of the New Fee Cap Bill. The Companies and Relay also shall not bring or support, financially or otherwise, any judicial proceedings seeking to challenge the Minimum Pay Rule's validity, implementation or enforceability or otherwise seeking any judicial relief as against the Minimum Pay Rule.  For sake of clarity, nothing in this Agreement prevents the Companies or Relay from challenging (including by way of an Article 78 proceeding) any new rulemaking or final agency action that alters the Minimum Pay Rule. The City does not concede the validity of any new legal challenge filed by the Companies or Relay, and reserves all rights to oppose and defend against any such legal challenge.

1.02.2  Notwithstanding the foregoing, the Companies and Relay retain all rights to defend against any enforcement action or proceeding by the City or any other party, and in the course of doing so may raise any and all constitutional and other arguments related to the process or method of enforcement, including, but not limited to, the fines, penalties, and other remedies sought, but the Companies and Relay may not argue that the Minimum Pay Rule itself or the New Fee Cap Bill itself is invalid facially or as applied to the company generally.

2.    **RELEASE PROVISIONS**

2.01    **Specific Release of the City by the Companies and Relay.** In consideration of the City's agreements and undertakings under this Agreement, subject to Sections 1.01.3 and 1.01.7 of this Agreement, and with the exceptions set forth in Section 2.03 below, the Companies and Relay, including their respective agents, partners, joint venturers, current or former officers, directors, trustees, attorneys, representatives, assigns, subsidiaries, affiliates, parent companies, and predecessors or successors, release and discharge the City, and its current or former officers, directors, employees, attorneys, agencies, and agents, from any and all claims, losses, debts, charges, damages, demands, obligations, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, remedies, penalties, costs, and expenses, of whatever nature, type, kind, description, or character, whether known or unknown, which the Companies and Relay do, did, or might have, own, or hold, on or before the Effective Date, with respect to the Local Laws, the Fee Cap Action, the Minimum Pay Rule, and the Minimum Pay Actions.

2.02    **Specific Release of the Companies and Relay by the City.** In consideration of the Companies' and Relay's agreements and undertakings under this Agreement,

subject to Sections 1.01.3 and 1.01.7 of this Agreement, and with the exceptions set forth in Section 2.03 below, the City, including its current or former officers, directors, employees, attorneys, agencies, and agents, releases and discharges each and all of the Companies and Relay, and each and all of their respective current or former officers, directors, employees, attorneys, agents, predecessors, successors, affiliates, parent companies, and subsidiaries, from any and all claims, losses, debts, charges, damages, demands, obligations, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, remedies, penalties, costs, and expenses, of whatever nature, type, kind, description, or character, whether known or unknown, which the City does, did, or might have, own, or hold, on or before the Effective Date, with respect to the Local Laws, the Fee Cap Action, the Minimum Pay Rule and the Minimum Pay Actions.

2.03    **Matters Not Released.**  Notwithstanding anything in this Agreement, and for the avoidance of doubt, the Parties do not release (a) any claims or actions seeking to enforce the terms of this Agreement or based upon a breach or non-performance of any Party's obligations hereunder, or (b) the City's authority to investigate and take enforcement action related to any violation of the Minimum Pay Rule by the Companies for any time period on or after November 30, 2023, or any violation of the Minimum Pay Rule by Relay occurring on or after the date its obligations under the Minimum Pay Rule become effective, as set forth herein. Except as set forth in Section 1.02 above, this Agreement shall not be construed as preventing the Companies or Relay from bringing legal challenges or raising legal arguments relating to legislation enacted, matters arising, or events occurring after the Effective Date.  The Parties' releases do not extend or apply to claims the Companies reassert upon a successful motion to vacate the dismissal of the Fee Cap Action under Section 1.01.06 of this Agreement.

2.04    **Effective Date of Releases.**  The Specific Releases in Sections 2.01 and 2.02 shall become effective when the New Fee Cap Bill becomes law.

3.    **MISCELLANEOUS PROVISIONS**

3.01    **Fair, Adequate, and Reasonable Settlement.** Each of the Parties believes this settlement is fair, adequate, and reasonable and has arrived at this Agreement in arm's-length negotiations, taking into account all relevant factors, present and potential.

3.02    **Authority.** The Parties represent and warrant to each other that the person executing this Agreement on its behalf has full authority and capacity to execute this Agreement and to give the releases and other promises contained in this Agreement.

3.03    **Voluntary Agreement.** Each of the Parties acknowledges that the Agreement has been fully read, reviewed, and understood by its authorized signatory, and that each Party signs the same freely and voluntarily.

3.04    **Independent Advice of Counsel.** Each of the Parties represents and declares that, in executing this Agreement, it has relied solely upon its own judgment, belief, and knowledge, and the advice and recommendations of its own counsel, concerning the nature, extent, and duration of its rights and claims. The Parties

acknowledge that they have executed this Agreement without fraud, duress, or undue influence.

3.05   **No Policy or Practice.** Nothing contained herein shall be deemed to constitute a policy or practice of the City.

3.06   **No Admission of Liability.** Nothing contained herein shall be deemed to be an admission by the City, or its agencies, current or former officers, directors, employees, attorneys, and agents, that it acted unlawfully or in any way violated any of rights or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules, or regulations of the United States, the State of New York, the City of New York, or any other rules, regulations or laws of any department or subdivision of the City of New York, in the Fee Cap Action or the Minimum Pay Actions. Nothing contained herein shall be deemed to be an admission by any of the Companies or Relay or any of their respective current or former officers, directors, employees, attorneys, and agents as to the merit or lack of merit of any claims, allegations, or positions asserted or advocated by the Companies or Relay in the Fee Cap Action or the Minimum Pay Actions.

3.07   **Entire Agreement/Construction and Interpretation.** This Agreement constitutes the entire understanding and agreement of the Parties with respect to the settlement of their disputes arising out of the Local Laws, and it supersedes and replaces all prior negotiations, proposed agreements, and agreements related to such disputes. Each of the Parties acknowledges that no other Party, nor any agent, representative or attorney of any other Party, has made any promise, agreement, covenant, representation or warranty whatsoever, express or implied, concerning the subject matter of this Agreement that is not contained in this Agreement. Any rule of construction, by which any ambiguities are to be resolved against the drafting party, shall not apply in the interpretation of this Agreement.

3.08   **Inurement.** The Agreement shall inure to the benefit of and be binding upon each of the Parties and its respective agents, partners, joint venturers, officers, directors, trustees, attorneys, representatives, assigns, subsidiaries, affiliates, parent entities, and predecessor or successor entities.

3.09   **No Third-Party Beneficiaries.** The Parties do not intend to create any third-party beneficiaries to this Agreement. Except for agents, partners, joint venturers, officers, directors, trustees, attorneys, representatives, assigns, subsidiaries, affiliates, parent entities, and predecessor or successor entities, no person or entity other than the Parties is intended to be bound by, or shall be bound by, any of the provisions of the Agreement.

3.10   **Waiver and Amendment.** A non-breaching Party may waive the breach of any provision of this Agreement only by executing a writing. Waiver of any breach shall not be deemed to be a waiver of any other breach of the same or any other provisions of this Agreement. This Agreement may not be modified, amended, supplemented, or terminated except by a written agreement executed by all Parties.

3.11   **Attorneys' Fees and Costs.** Each of the Parties agrees to bear its own fees and

costs in connection with the negotiation and execution of this Agreement and in connection with the Fee Cap Action and the Minimum Pay Actions.

3.12    **Enforcement.** Upon a breach by any Party of its obligations under this Agreement, the aggrieved Party may institute proceedings to obtain injunctive relief against the breaching Party.

3.13    **Governing Law.** This Settlement Agreement is being executed in the State of New York and shall be deemed to be made under, and shall be interpreted in accordance with, the laws of the State of New York and the laws of the United States, as applicable.

3.14    **Headings.** Captions, sections headings, and numbers have been set forth in this Agreement for convenience only and are not to be used in construing this Agreement.

3.15    **Further Assurances.** Following the execution of this Agreement, the Parties agree to take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the purposes of this Agreement.

3.16    **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute together one and the same instrument. The Parties will accept facsimile copies or emailed PDFs of the signature pages provided that the original signature pages are mailed or delivered personally or by overnight courier to the other Party's counsel.

IN WITNESS OF THIS AGREEMENT, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

**AGREED AND ACCEPTED**
**The City of New York**

DATE: April 23, 2025

By: _____
Karen Selvin
New York City Law Department
Counsel for the City of New York

**AGREED AND ACCEPTED**
**Uber Technologies, Inc.**

DATE: April 23, 2025

By: _____
Randall Haimovici
Associate General Counsel

**AGREED AND ACCEPTED**
**Portier, LLC**

DATE: April 23, 2025

By: _____
Michelle Parker
Authorized Signatory

**AGREED AND ACCEPTED**
**Grubhub Inc.**

DATE: April 23, 2025

By: _____
Howard Migdal
Chief Executive Officer

**AGREED AND ACCEPTED**
**DoorDash, Inc.**

DATE: April 23, 2025

By: _____
Greg Farano
Deputy General Counsel, Litigation

**AGREED AND ACCEPTED**
**Relay**

DATE: April 23, 2025

By: _____
Andrew Gasper
Relay Chief Governance Officer and Secretary

IN WITNESS OF THIS AGREEMENT, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

**AGREED AND ACCEPTED**
**The City of New York**

DATE: April 23, 2025

By: _____
Karen Selvin
New York City Law Department
Counsel for the City of New York

**AGREED AND ACCEPTED**
**Uber Technologies, Inc.**

DATE: April 23, 2025

By: *Randall Haimovici*
Randall Haimovici
Associate General Counsel

**AGREED AND ACCEPTED**
**Portier, LLC**

DATE: April 23, 2025

By: *Michelle Parker*
Michelle Parker
Authorized Signatory

**AGREED AND ACCEPTED**
**Grubhub Inc.**

DATE: April 23, 2025

By: _____
Howard Migdal
Chief Executive Officer

**AGREED AND ACCEPTED**
**DoorDash, Inc.**

DATE: April 23, 2025

By: _____
Gregg Farano
Deputy General Counsel, Litigation

**AGREED AND ACCEPTED**
**Relay**

DATE: April 23, 2025

By: _____
Andrew Gasper
Relay Chief Governance Officer and Secretary

IN WITNESS OF THIS AGREEMENT, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

**AGREED AND ACCEPTED**
**The City of New York**

DATE: April 23, 2025

By: _____
Karen Selvin
New York City Law Department
Counsel for the City of New York

**AGREED AND ACCEPTED**
**Uber Technologies, Inc.**

DATE: April 23, 2025

By: _____
Randall Haimovici
Associate General Counsel

**AGREED AND ACCEPTED**
**Portier, LLC**

DATE: April 23, 2025

By: _____
Michelle Parker
Authorized Signatory

**AGREED AND ACCEPTED**
**Grubhub Inc.**

DATE: April 23, 2025

By: _____
Howard Migdal
Chief Executive Officer

**AGREED AND ACCEPTED**
**DoorDash, Inc.**

DATE: April 23, 2025

By: _____
Gregg Farano
Deputy General Counsel, Litigation

**AGREED AND ACCEPTED**
**Relay**

DATE: April 23, 2025

By: _____
Andrew Gasper
Relay Chief Governance Officer and Secretary

IN WITNESS OF THIS AGREEMENT, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

**AGREED AND ACCEPTED**
**The City of New York**

DATE: April 23, 2025

By: _____
Karen Selvin
New York City Law Department
Counsel for the City of New York

**AGREED AND ACCEPTED**
**Uber Technologies, Inc.**

DATE: April 23, 2025

By: _____
Randall Haimovici
Associate General Counsel

**AGREED AND ACCEPTED**
**Portier, LLC**

DATE: April 23, 2025

By: _____
Michelle Parker
Authorized Signatory

**AGREED AND ACCEPTED**
**Grubhub Inc.**

DATE: April 23, 2025

By: _____
Howard Migdal
Chief Executive Officer

**AGREED AND ACCEPTED**
**DoorDash, Inc.**

DATE: April 23, 2025

By: _____
Gregg Farano
Deputy General Counsel, Litigation

**AGREED AND ACCEPTED**
**Relay**

DATE: April 23, 2025

By: _____
Andrew Gasper
Relay Chief Governance Officer and Secretary

IN WITNESS OF THIS AGREEMENT, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

**AGREED AND ACCEPTED**
**The City of New York**

DATE: April 23, 2025

By: _____
Karen Selvin
New York City Law Department
Counsel for the City of New York

**AGREED AND ACCEPTED**
**Uber Technologies, Inc.**

DATE: April 23, 2025

By: _____
Randall Haimovici
Associate General Counsel

**AGREED AND ACCEPTED**
**Portier, LLC**

DATE: April 23, 2025

By: _____
Michelle Parker
Authorized Signatory

**AGREED AND ACCEPTED**
**Grubhub Inc.**

DATE: April 23, 2025

By: _____
Howard Migdal
Chief Executive Officer

**AGREED AND ACCEPTED**
**DoorDash, Inc.**

DATE: April 23, 2025

By: _____

**AGREED AND ACCEPTED**
**Relay**

DATE: April 23, 2025

By: _____
Andrew Gasper
Relay Chief Governance Officer and Secretary

# EXHIBIT A

Proposed Int. No. 762-B

By Council Members Salamanca, Holden, Menin, Abreu, Williams, Stevens, Banks, Joseph, De La Rosa, Riley, Feliz, Narcisse, Dinowitz, Hanks, Ossé, Salaam, Brewer, Ayala, Farías, Ung, Hudson, Zhuang, Louis, Guttierez, Paladino, Carr, Vernikov and Marmorato

A Local Law to amend the administrative code of the city of New York, in relation to establishing exemptions for third-party food delivery services from the limits on fees charged by such services on food service establishments

Be it enacted by the Council as follows:

1       Section 1. The definition of "delivery fee" in section 20-563 of the administrative code of

2    the city of New York, as added by local law number 100 for the year 2021, is amended to read as

3    follows:

4       Delivery fee. The term "delivery fee" means a fee charged by a third-party food delivery

5    service for providing a food service establishment with a service that delivers food from such

6    establishment to customers located within at least 1 mile of such food service establishment. [The

7    term does not include any other fee that may be charged by a third-party food delivery service to

8    a food service establishment, such as fees for listing or advertising the food service establishment

9    on the third-party food delivery platform or fees related to processing the online order.]

10       § 2. Section 20-563 of the administrative code of the city of New York is amended by

11    adding new definitions for the terms "basic service fee," "enhanced service fee," and "exigent

12    circumstances" in alphabetical order to read as follows:

13       Basic service fee. The term "basic service fee" means a fee charged by a third-party food

14    delivery service for providing a food service establishment with a service that: (i) allows such food

15    service establishment to receive orders for delivery and pick-up on all websites and mobile and

16    online platforms offered by such third-party food delivery service; and (ii) enables a person to

17    search for such food service establishment on all such websites and platforms, in a manner that

1    prominently displays such food service establishment by name and includes such food service

2    establishment in results for a search based on customer criteria, such as cuisine type, location, or

3    delivery radius, that are relevant to such food service establishment.

4        Enhanced service fee. The term "enhanced service fee" means a fee charged by a third-

5    party food delivery service for providing a food service establishment with a service other than the

6    service such third-party food delivery service provides to such food service establishment in

7    exchange for paying a basic service fee, a delivery fee, or a transaction fee.

8        Exigent circumstances. The term "exigent circumstances" means circumstances outside the

9    control of a third-party food delivery service, such as severe weather conditions or natural

10    disasters.

11        § 3. Section 20-563.3 of the administrative code of the city of New York, as added by local

12    law number 103 for the year 2021, is amended to read as follows:

13        § 20-563.3 Fee caps.

14        a. It shall be unlawful for a third-party food delivery service to charge a food service

15    establishment a delivery fee that totals more than 15% of the purchase price of each online order

16    unless the average of the sum of all delivery fees a third-party food delivery service charges a food

17    service establishment in a calendar month totals no more than 15% of the sum of the purchase

18    price of all such orders in such month. Any third-party food delivery service that charges a delivery

19    fee pursuant to this subdivision shall provide delivery to any customer located within at least 1

20    mile of such food service establishment, unless exigent circumstances prevent such delivery.

21        b. It shall be unlawful for a third-party food delivery service to charge a food service

22    establishment [any fee or fees, other than a delivery fee and a transaction fee, for the use of their

23    service] a basic service fee that totals more than 5% of the purchase price of each online order

1    unless the average of the sum of all basic service fees a third-party food delivery service charges

2    a food service establishment in a calendar month totals no more than 5% of the sum of the purchase

3    price of all such orders in such month.

4        c. It shall be unlawful for a third-party food delivery service to charge a food service

5    establishment a transaction fee that totals more than 3% of the purchase price of each online order,

6    provided however that a third-party food delivery service may charge a food service establishment

7    a transaction fee of more than 3% of the purchase price of an online order if: (i) such transaction

8    fee is charged to the food service establishment in the same amount as the charge imposed upon

9    the third-party food delivery service for such online order, and (ii) such third-party food delivery

10    service can provide proof of such charge imposed upon it to both the department and the relevant

11    food service establishment upon request.

12        d. It shall be unlawful for a third-party food delivery service to charge a food service

13    establishment any fee other than a basic service fee, delivery fee or transaction fee, except that a

14    third-party food delivery service that offers a service for which such third-party food delivery

15    service charges a basic service fee pursuant to this section may charge an enhanced service fee.

16    Such an enhanced service fee may total no more than 20% of the purchase price of each online

17    order, unless the average of the sum of all enhanced service fees a third-party food delivery service

18    charges a food service establishment in a calendar month totals no more than 20% of the sum of

19    the purchase price of all such orders in such month.

20        e. Notwithstanding any provision of law to the contrary, it shall not be a violation this

21    section where a third-party food delivery service refunds to a food service establishment the

22    portion of any fee such third-party food delivery service has charged such food service

1    establishment that exceeds any fee cap imposed pursuant to subdivisions a, b or d of this section

2    within 30 calendar days of the final day of the month in which such charge occurs.

3    f. Where a food service establishment pays a third-party food delivery service a basic

4    service fee, such third-party food delivery service shall enable a person to search for such food

5    service establishment on all websites and mobile and online platforms offered by such third-party

6    food delivery service and shall not omit such food service establishment from relevant search

7    results produced in response to such search.

8    g. 1. Within 30 days of the effective date of the local law that added this subdivision, a

9    third-party food delivery service shall notify any food service establishment with which such third-

10   party food delivery service has an existing agreement of:

11   (i) The services offered by such third-party food delivery service;

12   (ii) The applicable caps on fees for such services pursuant to subdivisions a, b, and d of

13   this section;

14   (iii) The services provided to such food service establishment pursuant to such existing

15   agreement; and

16   (iv) Any change to a fee for any such service, provided that any such change shall take

17   effect no earlier than 30 days after notification of such change from the third-party food delivery

18   service to the food service establishment.

19   2. A food service establishment that has such an existing agreement with a third-party food

20   delivery service may modify the type of services such third-party food delivery service provides

21   to such food service establishment following: (i) notification from such third-party food delivery

22   service of a change in the amount of any fee charged by such third-party food delivery service; or

1    (ii) an offer from such third-party food delivery service to provide enhanced services to such food

2    service establishment.

3    3. A third-party food delivery service shall disclose, in a clear and conspicuous manner,

4    any fee, commission, or other charge imposed pursuant to any new or existing agreement between

5    such third-party food delivery service and a food service establishment.

6    h. Each month, a third-party food delivery service shall provide to a food service

7    establishment with which such third-party food delivery service has an agreement an itemized list

8    of each transaction between the food service establishment and the third-party food delivery

9    service, including any fees such third-party food delivery service charged such food service

10    establishment, in the preceding month.

11    i. A third-party delivery service shall not purchase or otherwise obtain the name of a food

12    service establishment from an internet search provider that sells advertising keywords for purposes

13    of internet advertising within the city, unless a food service establishment consents in writing,

14    including as part of an agreement in accordance with section 20-563.6. This subdivision shall not

15    apply to advertising or interest content outside of the city, and shall not prohibit a third-party food

16    delivery service from purchasing keyword advertising using common terms or names, including,

17    but not limited to, terms relating to locations, food types, or cuisine types.

18    j. A third-party food delivery service shall allow a food service establishment to include

19    menus, coupons or other physical marketing materials with any online order.

20    k. A third-party food delivery service shall not require a food service establishment, as a

21    condition of such third-party food delivery service providing such establishment with any service

22    for which such third-party food delivery service may charge a basic service fee, delivery fee,

23    enhanced service fee, or transaction fee pursuant to this section, to charge the same price for any

1  food or beverage item ordered through or with the assistance of such delivery service as such food

2  service establishment charges for such food or beverage item ordered directly from or through the

3  food service establishment, provided, however, that a third-party food delivery service and a food

4  service establishment may agree to terms regarding differences in pricing, including a requirement

5  that such establishment charge the same price for any food or beverage item ordered through or

6  with the assistance of such delivery service as such establishment charges for such food or

7  beverage item ordered directly from or through the food service establishment, in a written contract

8  or agreement other than the contract or agreement pursuant to which the third-party food delivery

9  service provides such food service establishment with services for which such third-party food

10  delivery service may charge a basic service fee, delivery fee or transaction fee pursuant to this

11  section, and provided, further, however, that any such agreement by a food service establishment

12  regarding differences in pricing may not be a condition of such third-party food delivery service

13  providing such establishment with any service for which such third-party food delivery service

14  may charge a basic service fee, delivery fee, enhanced service fee or transaction fee pursuant to

15  this section.

16      l. No later than September 30, 2023, and [every two years thereafter] no later than

17  September 30, 2026, the commissioner shall submit to the speaker of the council and the mayor a

18  report on the fee cap pursuant to this section, which shall include [but not be limited to

19  recommendations related to either the maintenance or adjustment of the fee cap as set forth in this

20  section, in consideration of factors from the immediately preceding two years, such as]:

21      1. The effect of the [cap] caps prescribed by subdivisions a, b, c, and d of this section on

22  third-party food delivery services and food service establishments, including, but not limited to,

1    any effect on the revenue of third-party food delivery services and any effect on marketing by and

2    revenue of food service establishments;

3         2. Whether [the cap] any such cap affects wages and working conditions for persons who

4    deliver food or beverages for third-party food delivery services;

5         3. Products that third-party food delivery services offer to food service establishments in

6    exchange for [listing, processing and marketing] paying basic service, delivery and enhanced

7    service fees;

8         4. The number of complaints made to the department related to the alleged violations of

9    this subchapter [and the number of violations issued under this subchapter];

10         5. The number of violations issued under this subchapter, disaggregated by section of the

11    code;

12         6. The number of violations issued to each third-party food delivery service licensed

13    pursuant to section 20-563.1;

14         7. The total amount of penalties imposed as a result of violations of this subchapter; and

15         [6.] 8. The amount of restitution recovered on behalf of food service establishments

16    pursuant to this subchapter.

17         § 4. This local law takes effect 30 days after it becomes law.

SS/RMC
LS #8717
4/23/25

8

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------------  x
                                                              :
DOORDASH, INC., GRUBHUB INC.,                                 :
and                                                           :
                                                              :
PORTIER, LLC,                                                 :
                                                              :
                       Plaintiffs,                            :   No. 21-cv-7564 GHW-GS
                                                              :
        - against -                                           :
                                                              :
CITY OF NEW YORK,                                             :
                                                              :
                       Defendant.                             :
                                                              :
                                                              :
----------------------------------------------------------------------  x
```

## STIPULATION OF DISMISSAL

**IT IS HEREBY STIPULATED AND AGREED:**

1.      Pursuant to Federal Rule of Civil Procedure 41 and the Settlement and Release Agreement annexed hereto at Exhibit 1, the above-entitled action is hereby dismissed with prejudice, with each party bearing its own attorneys' fees and costs.

2.      Pursuant to Section 1.01.6 of the annexed Settlement and Release Agreement, this Court shall retain jurisdiction over this matter for purposes of enforcement of the agreement through December 31, 2025.


Dated:          [DATE]
                New York, New York

**GIBSON, DUNN & CRUTCHER LLP**

By: _____
      Michael Holecek

Jonathan Soleimani
Esther Lifshitz
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY  10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035
MHolecek@gibsondunn.com
ELifshitz@gibsondunn.com
JSoleimani@gibsondunn.com

*Attorneys for Plaintiffs DoorDash, Inc.,*
*Grubhub Inc., and Portier, LLC*

**MURIEL GOODE-TRUFANT**

By: _____
      Nicholas Ciappetta

Jordan Schneider
Scali Riggs
NEW YORK CITY LAW DEPARTMENT
100 Church Street, 4th Floor
New York, New York  10007
Telephone:  (212) 356-4036
nciappet@law.nyc.gov
jschneid@law.nyc.gov
sriggs@law.nyc.gov

*Attorneys for Defendant City of New York*

SO ORDERED.

_____

Dated:

                                          GREGORY H. WOODS
                                          United States District Court Judge

# **EXHIBIT C**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

UBER TECHNOLOGIES, INC.,

                                    Petitioner,

v.

NEW YORK CITY DEPARTMENT OF
CONSUMER AND WORKER PROTECTION;
VILDA VERA MAYUGA, in her official
capacity as Commissioner of the New York City
Department of Consumer and Worker Protection;
THE CITY OF NEW YORK,

                                    Respondents.

Index. No. 155943/2023

**STIPULATION OF
DISCONTINUANCE**

**IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned, the attorneys of record for Petitioners and Respondents that, pursuant to the Settlement and Release Agreement annexed hereto at Exhibit 1, (1) the above-captioned action shall be, and the same hereby is, discontinued with prejudice pursuant to CPLR 3217(a), with each party to bear its own costs and fees; and (2) no party is an infant, incompetent person for whom a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action.

AND IT IS FURTHER STIPULATED AND AGREED that a facsimile copy of this Stipulation shall have the full force and effect of an original for all purposes.

1

DATED:      New York, New York
               [DATE]

| | |
|---|---|
| **PAUL, WEISS, RIFKIND,**<br>  **WHARTON & GARRISON LLP**<br>Attorneys for Petitioner<br>2001 K Street, NW<br>Washington, DC 20006<br>Tel: 202-223-7300<br>Email: kdunn@paulweiss.com | **HON. MURIEL GOODE-TRUFANT**<br>Corporation Counsel of the<br> City of New York<br>Attorney for Respondents<br>100 Church Street<br>New York, New York 10007<br>Tel: (212) 356-2208<br>Email: kselvin@law.nyc.gov |
| By: \_\_\_\_/s/ DRAFT_____<br>    Karen L. Dunn | By: \_\_\_\_/s/ DRAFT_____<br>    Karen B. Selvin<br>    Assistant Corporation Counsel |

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of,

RELAY DELIVERY, INC.,

               Petitioner,

For Judgment Pursuant to CPLR Article 78

         -against-

NEW YORK CITY DEPARTMENT OF
CONSUMER AND WORKER PROTECTION;
VILDA VERA MAYUGA, in her official capacity
as Commissioner of the New York City
Department of Consumer and Worker Protection,

          Respondents.

Index No. 155944/2023

**STIPULATION OF
DISCONTINUANCE**

**IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned, the attorneys of record for Petitioners and Respondents that, pursuant to the Settlement and Release Agreement annexed hereto at Exhibit 1, (1) the above-captioned action shall be, and the same hereby is, discontinued with prejudice pursuant to CPLR 3217(a), with each party to bear its own costs and fees; and (2) no party is an infant, incompetent person for whom a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action.

AND IT IS FURTHER STIPULATED AND AGREED that a facsimile copy of this Stipulation shall have the full force and effect of an original for all purposes.

Dated:  New York, New York
       [DATE]

| | |
|---|---|
| **WALDEN MACHT HARAN & WILLIAMS LLP** | **MURIEL GOODE-TRUFANT** |
| Attorneys for Petitioner | Acting Corporation Counsel |
| 250 Vesey Street, 27th Floor |   of the City of New York |
| New York, New York 10281 | Attorney for Respondents |
| Tel: (212) 335-2030 | 100 Church Street |
| Email: acohen@wmhwlaw.com | New York, New York 10007 |
| | Tel: (212) 356-2208 |
| | Email: kselvin@law.nyc.gov |
| | |
| By: ___/s/ DRAFT_____ | By: ___/s/ DRAFT_____ |
|     Adam P. Cohen |     Karen B. Selvin |
| |     Assistant Corporation Counsel |

# **EXHIBIT E**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------- x
In the Matter of the Application of,

DOORDASH, INC. and GRUBHUB INC.,

                          Petitioners,

For Judgment Pursuant to CPLR Article 78

                  -against-

NEW YORK CITY DEPARTMENT OF CONSUMER
AND WORKER PROTECTION, and VILDA VERA
MAYUGA, in her official capacity as Commissioner of the
New York City Department of Consumer and Worker
Protection,

                      Respondents.
----------------------------------------------------------------------- x

**STIPULATION OF
DISCONTINUANCE**

Index No. 155947/2023

       **IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned, the

attorneys of record for Petitioners and Respondents that, pursuant to the Settlement and Release

Agreement annexed hereto at Exhibit 1, (1) the above-captioned action shall be, and the same

hereby is, discontinued with prejudice pursuant to CPLR 3217(a), with each party to bear its own

costs and fees; and (2) no party is an infant, incompetent person for whom a committee has been

appointed or conservatee and no person not a party has an interest in the subject matter of the

action.

       AND IT IS FURTHER STIPULATED AND AGREED that a facsimile copy of this

Stipulation shall have the full force and effect of an original for all purposes.

Dated:  New York, New York
          [DATE]


**GIBSON, DUNN & CRUTCHER LLP**          **MURIEL GOODE-TRUFANT**
Attorneys for Petitioners                               Corporation Counsel of the
200 Park Avenue                                           City of New York
New York, New York 10116                          Attorney for Respondents
Tel: 212-351-4000                                        100 Church Street
Email: gherrmann@gibsondunn.com          New York, New York 10007
                                                                Tel: (212) 356-2208
                                                                Email: kselvin@law.nyc.gov


By: ____/s/ DRAFT_____          By: ____/s/ DRAFT_____
    Gabriel Herrmann                                     Karen B. Selvin
                                                                Assistant Corporation Counsel